Freeman M. COOPER,
Plaintiff-Appellant,

v.

The WILLIAMSON COUNTY BOARD
OF EDUCATION, Defendant-Appellee.

Supreme Court of Tennessee,
at Nashville.

Dec. 7, 1987.
Rehearing Denied Feb. 11, 1988.

Charles Hampton White, Richard L. Colbert, Cornelius & Collins, Nashville, for plaintiff-appellant.

Robert G. Wheeler, Jr., Brown, Brown, & White, Nashville, for defendant-appellee.

## OPINION

DROWOTA, Justice.

This direct appeal, brought under the Teacher Tenure Act, T.C.A. §§ 49–5–501, *et seq.*, involves the dismissal of Plaintiff, Freeman M. Cooper, from his position as principal of Fairview High School by Defendant, Williamson County Board of Education (the Board). Due to certain procedural defects in the proceedings in the trial court, we have determined that the judgment of the Chancery Court for Williamson County must be partially vacated and the

case remanded for a new hearing solely on the issue of the Plaintiff's dismissal.

### I.

The present posture and our disposition of this case make an extensive recitation of facts unnecessary, but a brief procedural history is useful. Plaintiff was employed as a teacher in the Williamson County School System in 1965. In 1984, as a result of a judgment of the Federal District Court for the Middle District of Tennessee, Plaintiff was appointed principal of Fairview High School for the 1984–85 school year. Over the course of the next two years, Plaintiff's performance became unsatisfactory and eventually the Superintendent of Schools, Kenneth L. Fleming,[1] brought charges against Plaintiff before the Williamson County Board of Education. Following an exhaustive hearing, the Board dismissed Plaintiff on February 7, 1986. Plaintiff subsequently filed a Petition in the Chancery Court for Williamson County on March 7, 1986, to obtain judicial review of the Board's decision pursuant to T.C.A. § 49–5–513.

On November 5, 1986, a hearing was held in Chancery Court in this case. At the beginning of the proceedings, the Chancellor stated that he had studied the Teacher Tenure Act and had concluded that

> "if we have, as I understand we have, a verbatim transcript of the hearing on the written charges before the School Board, at which both sides were represented by Counsel and witnesses were subject to examination and cross examination, that that is [a deposition], in the sense of the statute.
>
> "So that I can just order, and I do order that I'll hear this case on deposition, that being the transcript."

The Chancellor based his order on his construction of the statute as "a review statute", comparing his function in providing a

de novo review of the Board's decision to that of the Court of Appeals in reviewing the findings of a trial court in a non-jury case under Rule 13(d), T.R.A.P. Although he did not attribute a presumption of correctness to the findings and conclusions of the Board, he believed that his scope of review extended only to an examination of whether or not the evidence preponderated in favor of or against the determination of the Board. Plaintiff was precluded from presenting any additional, noncumulative evidence on the issue of the propriety of his dismissal and was limited to the introduction of evidence on whether the Board had violated the Tennessee Open Meetings Act, T.C.A. §§ 8–44–101, et seq. Plaintiff objected to this procedure, which limited the scope of review to the record made before the Board on the issue of his dismissal, but acceded to the order of the trial court. An offer of proof was, however, made by the Plaintiff.[2]

On January 5, 1987, the Chancellor filed his Memorandum Opinion in which he found that the evidence preponderated in favor of the Board's action in dismissing Plaintiff and he dismissed Plaintiff's suit. Notice of Appeal was filed on January 30, 1987. We now partially vacate the judgment of the trial court because the procedure used to review the action of the Board is contrary to the requirements of the Teacher Tenure Act, unduly narrowing the scope of review and denying Plaintiff a hearing de novo of his dismissal by the Board.

### II.

### A.

The action of a school board in dismissing or suspending a teacher is an administrative decision. Absent a statute providing the scope and method of review of an action of an administrative body, the

---

1. Originally, Mr. Fleming was named in his official capacity as a party to this action but he was voluntarily dismissed from the suit by Plaintiff; the Chancellor entered an order to this effect on January 5, 1987.

2. We have reviewed these materials but, in view of our decision in this case, we do not find it appropriate to comment upon their contents or their relevance to any issues. Nevertheless, we note that the offer of proof was directed to the merits of Plaintiff's dismissal by the Board.

available method of review is by a common law writ of certiorari.

"[The] cases, broadly speaking, recognize the distinction between the writ of certiorari as employed under the common law, for review of the legality of the action of a board or inferior tribunal as within its jurisdiction or powers, and the same writ authorized by statute to be employed, in lieu of an appeal, to review and correct errors of fact and law committed by such inferior tribunal."

*Anderson v. City of Memphis,* 167 Tenn. 648, 652, 72 S.W.2d 1059, 1060 (1934). *Compare* T.C.A. § 27–8–101 (Supp.1987) (common law writ of certiorari) *with* T.C.A. § 27–8–102 (Supp.1987) (statutory writ of certiorari available in certain instances). *See also* T.C.A. §§ 27–9–101, *et seq.; Davison v. Carr,* 659 S.W.2d 361 (Tenn.1983). Under the common law writ, the scope of review is generally limited to a determination of whether the administrative body acted within its jurisdiction, or acted arbitrarily, capriciously, or illegally. *See, e.g., Hayslip v. Bondurant,* 194 Tenn. 175, 250 S.W.2d 63 (1952); *City of Knoxville Board of Education v. Markelonis,* 62 Tenn.App. 181, 460 S.W.2d 362 (1969). The scope of review under the common law writ does not ordinarily extend to a redetermination of the facts found by the administrative body. As we observed in *Davison v. Carr, supra:*

"Generally, under common law certiorari, the scope of review is limited to the record to determine as a question of law whether there is any material evidence to support the agency's findings. However, new evidence is admissible on the issue of whether the administrative body exceeded its jurisdiction or acted illegally, capriciously or arbitrarily."

3. For example, T.C.A. § 57–5–109(d) (Supp. 1987) explicitly states that the review of administrative orders concerning beer permits is "by statutory writ of certiorari, with a trial de novo as a substitute for an appeal...." A number of similar statutory provisions exists in this State. They clearly contemplate a broader scope of review than would otherwise be available under the common law writ of certiorari employed to review administrative decisions. Furthermore,

659 S.W.2d at 363 (citations omitted). *Cf.* T.C.A. § 4–5–322(g) (Supp.1987) (Review of administrative actions under Administrative Procedures Act). See generally Cantrell, *Review of Administrative Decisions by Writ of Certiorari in Tennessee,* 4 Mem.St.U.L.Rev. 19 (1973).

In contrast, statutory writs of certiorari may provide for some form of a trial *de novo.* "The meaning of 'trial de novo' in each statute is obviously dictated by the wording and context of the statute in which it appears and by the nature of the administrative body, decision and procedure being used." *Pledger v. Cox,* 626 P.2d 415, 416–417 (Utah 1981). *Cf. Griffitts v. Rockford Utility District,* 41 Tenn.App. 653, 298 S.W.2d 33 (1956). The Teacher Tenure Act expressly provides that "[t]he hearing shall be de novo and may be on deposition and interrogatories, or on oral testimony." T.C.A. § 49–5–513(g). The statutory scheme involved in this case is more exacting and explicit in prescribing review of administrative actions of a school board than either the comparable section of the Administrative Procedures Act, T.C.A. § 4–5–322, or T.C.A. §§ 27–9–101, *et seq.* We conclude that these review provisions in the Teacher Tenure Act constitute a species of the statutory writ of certiorari.[3]

## B.

One of the fundamental purposes of the Teacher Tenure Act is "to protect school teachers from arbitrary demotions and dismissals." *Snell v. Brothers,* 527 S.W.2d 114, 116 (Tenn.1975) (citation omitted). To this end, when any tenured teacher is dissatisfied with the administrative decision of a school board regarding suspension or dismissal, the Teacher Tenure Act permits judicial review of the board's actions pursuant to T.C.A. § 49–5–513.[4]

this type of *de novo* review is distinguished from *de novo* appellate review.

4. Transfers of tenured teachers are treated separately under this statutory scheme. *See* T.C.A. § 49–5–510. *See also, e.g., Hyde v. Bills,* 696 S.W.2d 355 (Tenn.1985) (*Per Curiam*); *McKenna v. Sumner County Board of Education,* 574 S.W.2d 527 (Tenn.1978); *State v. Yoakum,* 201 Tenn. 180, 297 S.W.2d 635 (1956).

T.C.A. § 49-5-513(a) provides that a tenured teacher subject to dismissal or suspension by a school board "may obtain a judicial review by filing a petition in the chancery court of the county where the teacher was employed." The petition, to be filed within thirty days of the teacher's receipt of notice of the board's decision, "shall state briefly the issues involved in the cause, *the substance of the order of the board, or the respects in which the petitioner claims the order of the board is erroneous, and praying for an accordant review.*" T.C.A. § 49-5-513(b) (emphasis added). T.C.A. § 49-5-513(b) functions to place the board's decision before the Chancery Court for review. Under T.C.A. § 49-5-513(e), the filing of the petition for review suspends the board's order until a final determination of the propriety of the suspension or dismissal of the petitioner; however, the teacher does not "return to teaching pending final disposition of the appeal." If any defendant named in the petition desires to raise a defense, such defendant must file an answer within thirty days of the filing of the petition, absent a court ordered extension of time to file; the Chancery Court may permit intervenors and such amendments to the pleadings as in other cases governed by the Rules of Civil Procedure. Although T.C.A. § 49-5-513(b) contemplates a review of the board's decision, the Chancellor, ordinarily affording expedited treatment of these petitions, holds a "hearing [that] *shall be de novo* and may be on deposition and interrogatories, or on oral testimony." T.C.A. § 49-5-513(g) (emphasis added). Unlike T.C.A. § 49-8-304, which was construed in *Frye v. Memphis State University,* 671 S.W.2d 467 (Tenn.1984), this statute does not require that the record of the proceedings before the school board be certified and transmitted to the Chancery Court and the express terms of the statute clearly permit presentation of evidence different from or in addition to the transcript of the proceedings before the school board, including oral testimony in the Chancery Court itself. Upon hearing the evidence and considering the arguments at the hearing *de novo,* the Chancellor must reduce findings of fact and conclusions of law to writing for the record. T.C.A. § 49-5-513(h). Appeal from the Chancellor's decision is directly to this Court, "where the cause shall be heard on the transcript of the record from the chancery court." T.C.A. § 49-5-513(i). This last provision stands in contrast to the more expansive scope of review contemplated by subsection (g) in the Chancery Court.

Although the statutes involved are somewhat different, this situation is similar to the situation in *Frye v. Memphis State University, supra,* which involved university faculty tenure under T.C.A. §§ 49-8-301, *et seq.* In *Frye,* the Chancellor limited the review of the administrative decision to the record of the administrative hearing to determine whether the evidence preponderated in favor of the action taken by the administrative body. Despite the fact that the applicable statute in *Frye* did require transcription and transmittal of a certified record of the administrative hearing, unlike the statute in the instant case, we nevertheless concluded that the Chancellor's action denied the plaintiff a substantive hearing *de novo:*

"In our opinion this was error. 'De novo judicial review' in this statute and context means a new hearing in the chancery court based on the administrative record and any additional or supplemental evidence which either party wishes to adduce relevant to any issue. The Chancellor may, of course, confine new evidence to that which is truly supplemental or additional and is not required to hear all of the evidence anew if he does not find this necessary. Otherwise there would be little need for the administrative transcript. However, he may permit introduction of any and all evidence which he deems necessary to enable him to dispose of the issues presented."

671 S.W.2d at 469. In *Frye,* we compared the review provisions of T.C.A. §§ 49-8-301, *et seq.,* to those in the Teacher Tenure Act, finding that T.C.A. §§ 49-8-301, *et seq.,* contained provisions that are "not as clear and specific" as those in the Teacher Tenure Act, and concluded in that case that

"the General Assembly intended that there is a broad review in the chancery court with the right of the parties to offer additional evidence if desired. We do not believe that the General Assembly intended to confine review to the record made at the administrative level or to limit additional evidence at the chancery level only to alleged procedural irregularities or improprieties in the administrative process."

*Id.,* at 470. Moreover, we explicitly noted in *Frye* that "[i]n the review of cases involving tenured public school personnel, new evidence is frequently introduced at the chancery level, and it is not confined to procedural issues only. *See Potts v. Gibson,* 225 Tenn. 321, 469 S.W.2d 130 (1971)." *Id.,* at 470, n. 3. *See also Davis v. Barr,* 646 S.W.2d 914, 918 (Tenn.1983). Considering the purpose of the Teacher Tenure Act as a whole, the intent of a *de novo* review in Chancery Court is to prevent irreparable harm to the rights of a teacher that can result from permitting a prejudiced school board to dismiss or suspend a teacher without effective judicial review of such action. As we recognized in *Potts v. Gibson, supra,* "[m]uch of the mischief which could result from the system is obviated by the right to a trial de novo...." 225 Tenn. at 332, 469 S.W.2d at 135.

### C.

▮ Considering both the differences and similarities between the two statutory schemes in this case and in *Frye* and the result in *Frye,* we can only conclude that the scope of review afforded Plaintiff in the present case was erroneously narrowed in the Chancery Court. Consequently, the scope of review in the Chancery Court is not confined to a determination of whether the evidence preponderates in favor of the determination of the administrative board and no presumption of correctness attaches to the decision of the school board. The statute at issue does not attempt to limit the review in Chancery Court to the record before the school board and thus expan-

sively provides that the hearing *de novo* "may be on deposition and interrogatories, or on oral testimony," T.C.A. § 49–5–513(g); these terms are used in their ordinary sense in this statute. We think that a hearing *de novo* requires the Chancellor to redetermine both the facts and the law from all the evidence before the court. While not fully analogous, this type of review is more akin to an appeal from General Sessions Court pursuant to T.C.A. § 19–1–118 than to the review of the findings of a trial court in a nonjury case by an appellate court under Rule 13, T.R.A. P. Under Rule 13, T.R.A.P., an appellate court does

"not *try* a case *de novo* as does a Circuit Judge on an appeal from the General Sessions Court. In a *de novo trial* the Circuit Judge does not review the action of the General Sessions Judge and is not concerned with what took place in the General Sessions Court nor the propriety of the lower Court's action; and no presumption of correctness attaches to the General Sessions judgment. The matter is *tried* as if no other trial had occurred."

*Hohenberg Bros. Co. v. Missouri Pacific Railroad Co.,* 586 S.W.2d 117, 119 (Tenn. App.1979) (emphasis in original). Unlike the situation in an appeal to a court of record from General Sessions Court, which does not ordinarily preserve a record of its proceedings, a record of the hearing before the school board may be preserved and transmitted to the Chancery Court and this record can become a part of the evidence before the Chancellor.[5] We reiterate that a transcript of the board hearing is *not* required to be transmitted to the Chancery Court under the terms of this statute but we do not think any party is precluded from having such a record submitted to the Chancellor.

We think that review under T.C.A. 49–5–513 manifestly requires the Chancellor to reconsider and redetermine all issues of fact as well as law as if no such determination had been previously made. T.C.A.

---

5. If no record is preserved from the hearing before the school board or transmitted to the Chancery Court, then a complete hearing *de*

*novo* is required in the Chancery Court as if no hearing had been held before the board and the case had originated in that court.

§ 49–5–513(h) requires the Chancellor to "reduce his findings of fact and conclusions of law to writing and make them parts of the record." A ruling that the evidence preponderates for or against the determination of the school board does not comply with this provision of the statute. In contrast, the review before this Court on direct appeal under T.C.A. § 49–5–513(i) is limited to the record made in the Chancery Court, making the distinction between a hearing de novo in that Court and the scope of de novo appellate review clear for the purposes of this statutory scheme.[6] As we stated in *Davis v. Barr, supra,* any determination of whether or not a teacher should be dismissed, suspended, or reinstated "can only be made after a full evidentiary hearing on the merits, for we have in the pleadings before us disputed factual issues." 646 S.W.2d at 918. Under this statute, the Chancellor completely substitutes his judgment for that of the school board.

"Contention is made by respondents that if petitioner's right to a hearing *de novo* is sustained the result will be that the Court must substitute its opinion for that of the Commissioner. Conceding this to be true the Court cannot escape its responsibility, unwelcome though it may be, when the statute commands it, as it does in the instant case. The only alternative would be to hold that [the statute] is meaningless."

*Odle v. McCormack,* 185 Tenn. 439, 453, 206 S.W.2d 416, 422 (1947).

### D.

At the hearing before the school board, the burden of proof rests upon the party preferring the charges against the teacher. *Williams v. Pittard, supra,* 604

S.W.2d at 850. When a teacher dissatisfied with the administrative decision brings the board's action to the Chancery Court for judicial review, then the order of proof but not the burden of proof shifts. In the Chancery Court, the plaintiff's petition raises the issues for review, stating the substance of the board's actions and the errors made by the board in its decision, and thus the plaintiff must present a *prima facie* case to substantiate the allegations of the pleadings; however, the burden of proof regarding the charges against the teacher does not shift to the teacher and remains on the same party both before the board and in Chancery Court.[7] Since the hearing in Chancery Court is *de novo* and no presumption of correctness attaches to the board's decision, the burden remains on the party that bore it before the board but the order of proof is shifted under the statute to the party filing the petition for review because that party is challenging the validity of the administrative decision, the existence of which is clearly presumed by the terms of the statute. The plaintiff must, therefore, demonstrate the error in the board's action to satisfy the requirements of the statute. Once the plaintiff establishes a *prima facie* case, the defendant then bears the burden of showing that the action taken by the board is appropriate and that the evidence is sufficient to justify the board's action. The plaintiff may then have the opportunity to rebut any proof proffered by the defendant. As in any case, the Chancellor then entertains arguments and considers the evidence presented in Chancery Court to decide the issues raised on their merits to determine whether the board's action was justified. The statute clearly contemplates that the Chancellor afford the plaintiff a hearing *de novo*

---

6. Compare *de novo* review of sentences in criminal cases on appeal under T.C.A. § 40–35–402(d) (Supp.1987), which expressly provides that no presumption of correctness attaches to the sentence imposed by the lower court, with *de novo* appellate review under Rule 13, T.R.A.P., or with *de novo* appellate review in Workers' Compensation cases under T.C.A. § 50–6–225(e) (Supp.1987), both of which attribute a presumption of correctness to the judgment below. In teacher tenure cases, this Court also conducts a *de novo* review on appeal but the Chancellor's

decision is "accompanied by a presumption of correctness of his decree, unless the preponderance of the evidence is otherwise." *Williams v. Pittard,* 604 S.W.2d 845, 846 (Tenn.1980) (citations omitted). *See also* Rule 13, T.R.A.P.

7. That party bearing the burden may choose to rely on the transcript of the hearing before the board and present any rebuttal necessary to the plaintiff's *prima facie* case.

as if the Chancery Court were making the initial determination of the status of the teacher. *See Fleming v. Wade,* 568 S.W.2d 287 (Tenn.1978).

### III.

Plaintiff has raised several additional issues and, while we must partially vacate the judgment and remand this case for further proceedings to provide Plaintiff a hearing *de novo* as required by the statute, we have considered these remaining issues and have concluded that the judgment of the Chancery Court must otherwise be affirmed. We address these other issues briefly.

 The Chancellor did permit Plaintiff to present evidence concerning certain alleged violations of the Tennessee Open Meetings Act, T.C.A. §§ 8–44–101, *et seq.,* and this issue cannot be tried again on remand. The Chancellor determined that an informal gathering attended by a quorum of the Board to consult with the Board's attorney concerning the legal ramifications of bringing charges against Plaintiff, in view of the possibility of being found in contempt of the standing Federal District Court order to reinstate Plaintiff as a principal of a county high school, and at which meeting no action was taken by the Board, was not a meeting within the meaning of T.C.A. § 8–44–102(c). Regardless, the Chancellor concluded that such a meeting would fall within the attorney-client exception established by *Smith County Education Association v. Anderson,* 676 S.W.2d 328 (Tenn.1984), if it did constitute a meeting within the meaning of the statute. Subsequently, the Board met with its attorney to discuss a settlement offer made by Plaintiff, whose attorney requested that this offer not be made public; the Board made no decision at this meeting and no preliminary deliberations were undertaken by the Board. The Chancellor applied the same rationale to this second meeting as he had to the first. We agree that the attorney-client exception would have application under these circumstances.

Plaintiff also contends that he was denied due process because the Board was biased against him and had predetermined the outcome, acting in an arbitrary, capricious and unlawful manner in dismissing him. The Chancellor reasoned that the Teacher Tenure Act recognizes that members of a school board could be prejudiced against a teacher and that the board would probably be aware of the situation before charges were formally brought and a hearing held, but any prejudice would be cured by a hearing *de novo* in the Chancery Court. Although we have determined that Plaintiff was not fully afforded a hearing *de novo* within the meaning of the Teacher Tenure Act, we nevertheless agree with the Chancellor on this aspect of the issue and have previously addressed the issue in *Potts v. Gibson, supra:*

> "It is inevitable that members of a school board should form an opinion, good or bad, of teachers and especially school principals within the system. And by reason of their official duties the members may possess valuable information either for or against individual members of the teaching and executive staff and consequently can offer valuable testimony at a disciplinary hearing before the board. Yet, the law makes no provision for a hearing before another tribunal. Much of the mischief which could result from the system is obviated by the right to a trial de novo conferred by [this statute]."

225 Tenn. at 332, 469 S.W.2d at 135.

 Furthermore, a number of teacher tenure cases have referred to a plaintiff's contention that a board acted in an arbitrary, capricious, and unlawful manner in determining the propriety of a suspension or dismissal. *See, e.g., Fleming v. Wade, supra,* at 290; *Potts v. Gibson, supra,* 225 Tenn. at 325, 469 S.W.2d at 134. Given the availability of a hearing *de novo* in these cases, in which the Chancellor redetermines the merits of the charges and decides whether a board's actions were justified by the evidence, we do not think that whether a board acted arbitrarily or capriciously has any relevance to the status of the teacher because a hearing *de novo* in the Chancery

Court readjudicates the matter in a neutral forum, completely eliminating any arbitrariness or capriciousness in the board's decision, which is not afforded a presumption of correctness. Prejudice or bias would be relevant to impeach a board member who testified but any arbitrariness or capriciousness on the part of the board is cured by the hearing *de novo*. Raising this issue in the Chancery Court seems to be a holdover from petitions for the common law writ of certiorari but it is not generally appropriate under the Teacher Tenure Act, which permits review of the administrative decision by a species of the statutory writ of certiorari and contemplates a much broader scope of review both of facts and of law to decide the case on its merits.

## IV.

Nothing in this opinion or in the Teacher Tenure Act's review provisions restrains the discretion of a trial court to control its proceedings and to prevent introduction of cumulative, repetitive, or irrelevant evidence. No conflict exists between the concept of a hearing *de novo* in this statute and the trial court's discretionary authority over the conduct of trials. "Manifestly, a trial Judge must have some control over the dispatch of business in his court, and some discretion respecting the number of witnesses he will hear upon a specific line of inquiry incident to a case." *Powers v. McKenzie*, 90 Tenn. 167, 182, 16 S.W. 559, 562 (1891). Where a record of the proceedings before the school board is preserved and submitted, the Chancellor considers this record as if the testimony or other evidence contained in it had been presented in Chancery Court. Nevertheless, the parties may supplement this record with additional evidence concerning the charges, may attack the credibility of witnesses before the board or in the Chancery Court, including the attempt to show the prejudice or bias of testifying board members, and may raise any additional issues justified by the pleadings. In short, the parties may present such evidence relevant to a proper determination of the status of the tenured teacher and to a just disposition of the case *on its merits.*

"On remand, the parties should be allowed to put on any additional or supplemental proof which they desire, relevant to any of the issues. The Chancellor should then review the administrative record [, if any,] and any additional evidence brought before him to determine the weight of evidence and its preponderance, including the credibility and veracity of witnesses."

*Frye, supra,* 671 S.W.2d at 470.

Having determined that the scope of review provided in the Chancery Court for Williamson County deprived Plaintiff of his statutory right to a hearing *de novo* under T.C.A. § 49-5-513, we are compelled to vacate the judgment of the Chancery Court in part. The remainder of the judgment, aside from the propriety of Plaintiff's dismissal, is hereby affirmed. Accordingly, the case is remanded for a new hearing on the merits. The costs on appeal are taxed equally between the parties; the balance of the costs abide the outcome on remand.

HARBISON, C.J., and FONES, COOPER and O'BRIEN, JJ., concur.

## ORDER ON PETITIONS TO REHEAR

The Plaintiff–Appellant, Freeman M. Cooper, and the Defendant–Appellee, Williamson County Board of Education, have filed Petitions to Rehear in the above case. After careful consideration, the Court is of the opinion that the Petitions to Rehear are not well taken and the same are denied at the cost of the respective parties.

HARBISON, C.J., and FONES, COOPER and O'BRIEN, JJ., concur.